14-3511 Leaman v. Wolfe. Mr. Bercow and Mr. Wolfe, I should just note that because Judge Schwartz has another panel that starts at 930 and it needs to start on time, we'll keep pretty much the time limits. And then after we're done, we'll clear the courtroom and we'll confer with Judge Banaski almost immediately after. Thank you. Thank you. Whenever you're ready, Mr. Bercow. Thank you, Your Honor. May it please the court, counsel, my name is David Bercow and I'm here on behalf of the appellant Janice Leaman in this matter. I apologize, am I too loud? No, you're fine. I have reserved three minutes of rebuttal time for this matter. Thank you, Your Honor. The first question I have is how did this get negotiated, this $100,000 that if he pays timely the $100,000 or whatever, the note becomes in effect, the amount becomes $100,000 less. What happened there? That was all done during the settlement conference, the mediation with Magistrate Judge Welsh, who mediated the matter, counsel who was different counsel for Mr. Wolfe and myself for Ms. Leaman. What had happened, just briefly, Your Honor, you're generally familiar with the facts. This case arises out of a nearly 30-year business relationship between my client, Ms. Leaman, and the defendant appellee, Mr. Wolfe. It concerns a private court reporting service. Early on, it was a 50% ownership interest. For years, that's how it was conducted. After some time, Mr. Wolfe started usurping his control and usurping money and taking funds away from Ms. Leaman, which generated the underlying lawsuit. They settled. They settled that claim, but over the course of those years, which is important to understand, Your Honor, there have been so many broken promises, so many things that weren't done that should have been done, so they negotiated the $475,000 settlement. In the note, the note was designed to secure the payments because Mr. Wolfe had shown a very poor history of being able to keep his promises and make payments on time. As a result, he was encouraged to timely pay. As a result, the $475,000, which the note is clearly for, would be discounted by $100,000. It was an incentive? It was an incentive, but it wasn't a penalty. It was an incentive to allow him to get the discount because she had contributed. When is an incentive not a penalty? Normally, if you have liquidated damages and you have money damages, everything, including the restatement, tells us that you can just estimate those very easily by an interest rate or, in a reverse way, a discount rate. This is totally different than that. This is completely different than that, and a couple of things, as I may go off on a side. I know the court has discretion to raise this issue of liquidated damages versus a penalty in this matter. Typically, that discretion is limited for exceptional circumstances where public interest is at play. I don't believe that's an issue here. Secondarily, the appellee never raised those issues that this was liquidated damages or a penalty at any point in time, and therefore, that is waived. That is not an issue here. I'm prepared to address it, and to your point, Your Honor. The argument he made was there was substantial performance, and we'll have questions relating to substantial performance to your opposing counsel, but back to why is this not a penalty? This is not a penalty, Your Honor, because it is not designed to punish Mr. Wolf. It is not something that goes on for a series of time. Liquidated damages, as we're familiar with, typically, they will continue to you have not performed or you're not performing the way you should. This is not that. This is no different than if you pay your real estate taxes by a certain period of time, you get a discount. But if you fail to go back to the total, the settlement agreement says $475,000 was owed. Under the settlement agreement, if you were untimely and didn't cure in time, the obligation was to pay an extra $100,000 plus anything that wasn't paid to date, correct? I believe that's correct. Let's go back to the judgment. The judgment, if you add up the installment payments, the installment payments come to $375,000 and then $100,000 waived. Is the difference between the numbers because by the time the judgment was signed, he had paid the first $100,000? No, it's not, Your Honor. The $100,000 was an additional amount of money that Ms. Lehman wanted to negotiate for, but Mr. Wolf was not willing to pay for. So when you say there's a reduction, the total agreed upon amount had there been timely payment was $475,000. Is that correct? That is correct. Okay. Then we have this extra $100,000 that you're describing as an incentive to pay on time. Well, it's not an incentive. It's a discount. It's money that Ms. Lehman negotiated for, but Mr. Wolf was unwilling to pay. You just said it was an incentive at the beginning of this. Well, let me clarify that. That's a word that's going to be taken, I think, already further than what I meant for it to be taken. The incentive was the confession of judgment. That was the incentive. If you fail to pay and you default on this, and the note is clear, it says any payment. It doesn't say one, two, three, or 100. It says any payment, the confession of judgment kicks in. To our understanding, that was the incentive because that meant we were going to take a judgment against you personally for this total amount. Plug, but the total that would have been paid to Ms. Lehman would have been $575,000, correct? Not the $475,000 that had been negotiated, correct? Yes. It was broken up between the two and probably not as artfully as it needed to have been laid out knowing that we're here now, but that was the intent of it at the time. When you look at the series of payments over the course of the transaction, the $100,000, what the note doesn't say is that he can't pay that over a series of time, or that he can't pay that in installments as well. That's something that the note is somewhat silent on. It says Ms. Lehman has the right to accelerate payments, which she didn't because he continued to pay thereafter. This type of arrangement, as we stated in our brief, has been approved. This penalty, which it's not, this liquidity to damages, which it's not, is very different. What we have here is a, I would say, quintessential lender-creditor arrangement, as we noted in the PNC Bank case. This is a situation where you have an amount of money that you are required to pay. If you pay that amount of money by a certain point in time, you get the benefit of the discount. No different as I was alluding to earlier. What are you discounting? The amount due was $475,000. He's not getting a discount of $475,000. Off the note, he is, Your Honor. The note says it's for $475,000. So does the settlement agreement. The settlement agreement says the amount due is $475,000. And the note increases the total amount of the purported settlement agreement if he doesn't pay timely. Then how is that different than the $100,000 default clause in the settlement agreement? They're the same, no? They have to be. I'm sorry. They have to be the same. Focus on the settlement agreement for a second. There's a payment schedule. Then there's $100,000 plus any amount unpaid if there's not timely payment. Yes. Now move to the judgment. The judgment has a group of 31 installments and then $100,000 that would be, quote, forgiven. We're not talking about the same $100,000? Oh, I see what you're saying. Yes, we are talking about the same $100,000. Let me back up. There was a $100,000 payment that had to be made up front in the settlement agreement. That was never forgiven. That was not meant to be forgiven.  There was a remaining amount, according to the settlement agreement, $375,000. But what they negotiated was a $475,000 debt that would be discounted by the $100,000 if he timely performed. Because as I said before, Mr. Wolf had a very difficult time timely paying on these things. And the part of this, to get into the issues, now I see I'm off track on my time, this substantial performance doctrine has absolutely nothing to do with a case like this. And quite frankly, as I've gone back through the cases in the briefs, I still don't understand, taking off my lawyers and advocacy hat for a moment, how it applies here. Every case cited by the district court- I guess I'll back straight here. I thought he agreed to pay one payment of $100,000, one payment of $50,000, 12 monthly installments of $12,500, that equals $150,000. So I'm now at $300,000, 17 monthly installments of $10,000, that's $170,000. So that gets you to $470,000 and one monthly installment of $5,000, that's $475,000. If he missed any deadline, he had 10 days. He also agreed to a final payment of $100,000 to be waived, not due an owing, upon his timely payment of the aforesaid 31 installments. So Judge Schwartz has to be right, it's $575,000 technically. Yes, I thought I was saying that, Your Honor. Maybe I'm parsing words here, but that's what it was. I said that earlier, it was $575,000. And so that, and you said at the beginning it was an incentive, then later on you said it wasn't an incentive. And what we're saying to you, none of the briefs cite Restatement Second 356 of the Restatement Second of Contracts. And if you take a look at Comment C, essentially it says, however, it doesn't make any difference how you set it up, what you call it. If it's a disguise penalty, it's a disguised penalty, period. But there's no evidence here to suggest it is a disguised penalty, Your Honor. It's consistent with the other payments that have been made. There's no evidence that the parties set down- No evidence is there that it's not a disguised penalty. The very fact, Your Honor, that the contract, the note under which this case has been brought, clearly sets out what the parties agreed to. And the parties agreed that this would be a discount. The PNC Bank case is directly on point with this. The other cases cited, Your Honor, are not. They have to do with the following. The provision of payment for goods. The provision of payment for services. The provision of payment for land acquisition. We have none of that here. The note was very straightforward. Mr. Wolf's responsibility was, one, pay money. Two, on time. Three, in full. That's all he would do. In return for that, Your Honor, what did he get? He got Ms. Lehman's goodwill. He got Ms. Lehman's business. She didn't retain the contracts. She didn't retain the clients. She got only, out of this, the stream of payments. That's all she got. Mr. Wolf got the benefit of his bargain, regardless of how much he paid, and continued to make money off of her clients and her goodwill and her name to this very day. It's still known as Kaplan, Lehman, Wolf. How much has your client received to date? To date, she has been paid in full of the $375,000. And the $475,000 total is what she's been paid. She's been paid a total of $475,000? Yes. Okay, so the issue here is whether she gets another $100,000. Yes, the discounted amount there, plus the attorney's fees. But I don't understand what's being discounted, because the amount agreed to in the settlement agreement is $475,000. Plus an additional $100,000 payment, as Your Honor noted, which would be $575,000 total. But that's only triggered for a lack of timely payment. That's true. Okay. Why don't we hear from Mr. Wolf? I'm sorry, Tom, do you have any questions? I apologize. I do not have any questions at this time. Good morning, Your Honor. My name is Stephen Wolf, and I represent the appellee Greg Wolf. Are you related to him? I am. I'm his brother. Okay. Why was there a consistent failure to pay timely every month, so you had to get a notice? Your Honor, that is a key portion of this case. When this was negotiated, as we notified in our brief, Mr. Wolf knew from his cash flow, and he bills at certain points. Captain Layman and Wolf bills at certain points during the course of the month. He knew that his cash flow came in at the end of the month. He wanted the payments to be due around the 20th, the 21st, 22nd of the month. The mediation occurred on the 11th of the month. Ms. Layman wanted the payments due consistent with that same date, and he was up front with her. He says, I can't do it. I need 10 days. They negotiated a 10-day period in there where he'd be able to accomplish what he needed to accomplish. Yeah, but in effect, he had to get an effective fault notice almost every time, and then he would pay, except for the last two times in which he had extraordinary circumstances that came up. He was very up front with Ms. Layman at the beginning. He said, I can't make the payments by the 11th. I need 10 days, and she gave him the 10 days. There were only two times when that occurred. One was when his son passed away unexpectedly, and he made that payment immediately as soon as he could after she made a reasonable demand, and then the second time is this time when UPS lost the actual payment, but she knew up front that he was going to need those 10 days, and he used them, and it's our argument that he had the right to use them. Now, I know there's been some discussion here regarding the amount of the settlement. It's our position that this was a $475,000 settlement, not 575. If you look at the agreement, the agreement specifies a series of installment payments, and one of those installments was the $100,000 payment. That was not an up front payment. It was an installment. The balance was $375,000 after that first installment. The note... We've got that, and what you said at the district court, and what the district court agreed with is that there was substantial performance, but does the substantial performance forgive all damages? Well, first of all, Your Honor, it's our position that Ms. Layman has For example, does it forgive or make it so that you cannot have acceleration or attorney's fees for the expense that she's gone through? I think that under these circumstances, and under these circumstances it does, and for the following reasons. One, if she underwent any expense, it was at her own doing, because she was made aware in a timely manner that UPS had lost the payment, that the payment had been sent. There was no reason for her, using her husband as an attorney, by the way, to incur any expense to confess judgment or to proceed with a confession of judgment, knowing what UPS had done inadvertently. At the very least, isn't she entitled to interest on the late payments? If she's entitled to interest on the late payment at current market rates, I suppose an argument could be made on that if she's interested in two weeks' worth of interest on whatever that payment was, 12-5. So I think at most that's what she'd be entitled to, not counsel fees, not a windfall of $100,000. Also, I think what you've got to look at is the factors that are enumerated in Gray v. Gray and in the restatement, the extent to which she's been deprived of the she got $475,000. The extent to which she can adequately be compensated for any benefit of which she has been deprived. The only thing she was deprived of is a late payment by two weeks. But those factors that you're about to recite, apply to these facts, deal with a circumstance of where the non-breaching party is looking to suspend the contract in its entirety. And I think it goes back to what Judge Ambrose was asking, is there any case that says that the breaching party is still forgiven from having to pay any damages? There are two different remedies, I'm sure you understand. Yes, yes. And while I understand that the doctrine of substantial performance largely deals with the non-breaching party's right to suspend the contract, I think it's equally applicable to these unique facts in that this is a situation where the breaching party should be entitled to say, I didn't breach. I didn't engage in a material breach. There may have been a technical breach because this payment was lost by something that was not my fault. But doesn't the case say the immaterial breach does not mean there's no damages? It just means there's no suspension of the obligations of the non-breacher? Yes, that is what the actual case law says. We're arguing that the doctrine of substantial performance, as Judge Buckwalter indicated in his opinion, should apply to this case for those reasons that are set forth in the Gray case. And we also pointed out, as did Judge Buckwalter, the Miles v. Aramar case, and that is that the whole purpose of the substantial performance doctrine is for the protection and relief of those who have faithfully and honestly endeavored to perform their duties. And that's what Mr. Wolf did in this case. He made every payment that he was required to make within the 10 days that he had negotiated, with the exception of two. The first when his son passed, and the second when UPS lost it. Also, we look at the Miles case, and Judge Dalzell in that case said that you've got to import common sense, and you've got to look to conserve judicial resources. So you want us to expand the idea of substantial performance to not only, no, let me put it this way. You want us to expand the doctrine to allow a breaching party to be absolved of paying damages if the breach is immaterial? If the breach is immaterial, and if the five criteria that are set forth in the Gray case are met. And they are all met in this case. And what you would have if you enforced what amounts to a penalty, and this is a penalty, make no mistake about it, this is a penalty. The agreement calls for a $475,000 payment. The note calls for $475,000, and if you interpret the note the way I think it should be interpreted, if Mr. Wolf would have made the payments on time, he could have conceivably, if you're looking at the note, said I only owe $375,000, because the note lets me off the hook for the last hundred, but I've already paid it. So he's made every single payment that he was obligated to make. So he has done everything that he was to have done. It ends up today, just to confirm, that he has, your brother has paid $475,000. He has paid $475,000, and when he found out that UPS lost the payment, he got it to him right away. And he was out of the country, which is the only reason it took two weeks instead of two days. He was out of the country. He was out of the country with me to get his mind off his loss. If we were to find that the Doctrine of Substantial Performance does not apply here, and yet the $100,000 payment is a penalty clause, what about the attorney's fees provision? What would be a reasonable attorney's fee here? Your Honor, we believe that there would be no attorney fee would be a reasonable attorney fee in this case, because Ms. Lehman knew at a very early stage why she had not received her payment. She had proof from UPS that they had lost the package. The fact that she went ahead, and her husband went ahead, to proceed with a confession of judgment in what I would submit would be an effort to generate fees for themselves with no good reason. That would not entitle them to any attorney fees. Thank you. If you have any questions, I'll answer those. Otherwise, I'll proceed. What I hear here, and what has been so alarming about the district court's opinion is the following. This case for Mr. Wolf has become no harm, no foul. We've heard his counsel argue that Ms. Lehman's been paid in full. What we haven't heard is that hasn't been accelerated payment, Your Honor. It doesn't make any difference. Well, it does, because she had the right to require that. But based on the district court's opinion, we can't even do that. If you're owed X, and you have been paid X, what is left to accelerate? No, that's just it, Your Honor. At the time of the breach, there were substantial payments still remaining, and those weren't accelerated. He didn't pay those in an accelerated fashion. He continued to pay those over time. And that was to the question we talked about, whether there should be interest on that, and whether there should possibly be attorney's fees. In terms, there's no longer today a right to accelerate. That is correct. But I'm talking about, since we're here talking somewhat of the theoretical and somewhat of the historical, I think we should get the historical clear. Secondarily, as to the attorney's fees, it's clear, the Pennsylvania case law we cited in our briefs is clear, that the confession of, a warrant for confession of attorney containing, I'm sorry, a warrant for confession of judgment containing attorney's fees recoveries for the party filing it are enforceable. And there's all types of case law where 15%, various percents are enforceable. It was the appellee's responsibility to show that those fees were excessive or challenge those in the lower court. There was no discovery taken on that, none whatsoever. So this is the record they have. And now that we've obviously gotten to this point before this esteemed panel, clearly the attorney's fees that Ms. Slayman has incurred are significant compared to what they were at the time she confessed judgment. But the agreement limited it to 20% of the amount due. Of the amount due at the time of the breach. I'd like to just ask about this, the fee, the 20%. I'm aware of the case law about that percentages for the attorney fee calculation has been approved in certain contexts. But in this particular concept, the 20% amount, since it's tied to the amount due, there'd be a large fee award if the breach was very early in the installment plan. A smaller fee award if it were later in the process because it's based on the amount due. So if there was only one installment left, it'd be 20% of the $5,000 or whatever that last amount was. But the amount of work is exactly the same. Well, I don't believe that's true here. A smaller amount or a large amount because it's a 20% figure. So it doesn't change the amount of legal resource expenditure, does it? I don't believe it does unless you're talking very limitedly in terms of what you file with the court. But in terms of, and I've done too many of these now in my career, in terms of how much effort you have to put in to get that money back, it varies considerably based on the amount of money that's due and owing. Okay. Thank you. Thank you, Your Honor. Thank you both. Counsel, for presented arguments, we'll take the matter under advice.